IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

IN RE:

SUSAN E HALWACHS,

Debtor(s).

In Proceedings Under
Chapter 13

Case No. 19-30557

## OPINION

This case presents the issue of whether a post-confirmation plan modification must satisfy the requirements of Section 1325(b) of the Bankruptcy Code.

## FACTS

The following facts are not in dispute. Debtor Susan Halwachs ("Debtor") filed her petition for relief under Chapter 13 of the Bankruptcy Code on April 26, 2019. Her original Schedule I reported monthly gross income from wages of $3,585.00 and retirement income of $1,521.50, resulting in net monthly income of $4,819.50.[1] Debtor's original Schedule J showed expenses of $3,527.00. Debtor is a below-median debtor as determined under 11 U.S.C. §1322(d)(2). As such, her available disposable monthly income was calculated at $1,292.50 with a three-year commitment period.

Debtor's original Chapter 13 Plan proposed a plan duration of 60 months with monthly plan payments of $690.00. It also provided for 100% repayment of allowed general unsecured claims ("Original Plan"). Her monthly disposable income of $1,292.50 exceeded her monthly proposed plan payment under the Original Plan by $602.50. On June 5, 2019, the Trustee filed his Objection to the Original Plan, stating:

> Debtor's plan as proposed provides to pay a 100% pool to allowed general unsecured claims over a proposed plan duration of 60 months. Pursuant to 11 USC 1322(d)(2), the Debtors' plan "may not provide for payments over a period that is longer than 3 years, unless the court, for cause, approves a longer period, but the court may not

---

[1] Debtor received an extension of time and filed her original Schedules I and J on May 17, 2019.

1

approve a period that is longer than 5 years." The Trustee asserts that the Debtors' elective deferral of payment of disposable income for a period exceeding 3 years is not "cause" as contemplated by the statute. The plan must be reduced to a duration of thirty-six months.

In response to the Trustee's objection, on June 20, 2019, Debtor filed her First Amended Chapter 13 Plan (incorrectly titled "Second Amended Plan"). This Plan reduced the plan duration to 48 months, but still provided for 100% payment of allowed general unsecured claims. Like the Original Plan, the Debtor's First Amended Plan also proposed payments that were less than her monthly disposable income. The First Amended Plan provided for monthly payments of $690.00 for the first two months of the plan, and $885.00 for months three through forty-eight. This plan was confirmed on July 12, 2019.

The Debtor subsequently filed several amended plans.[2] In every instance, the proposed plan payments were *significantly* less than the Debtor's monthly disposable income. However, because all of the plans also provided for 100% payment to general unsecured creditors, each were ultimately approved.

On July 5, 2023, Debtor filed her Fifth Amended Plan (incorrectly titled "Sixth Amended Plan") to cure a payment delinquency. This Plan drastically reduces the monthly plan payment to $101.00 per month for the remainder of the plan duration. In addition, unlike the previous plans where the Debtor proposed 100% repayment to unsecured creditors, the Fifth Amended Plan reduces the pool to be paid to allowed general unsecured creditors to $0.00   On September 12, 2023, after the Trustee raised an objection to the Fifth Amended Plan, the Debtor filed Amended Schedules I and J to reflect her current income and expenses,  The Amended Schedule I indicates that the Debtor is now retired and that her only income is $1,973.00 per month in social security benefits. The Amended Schedule J reports expenses of $2,368.00, resulting in negative monthly disposable income of ($395.00).

---

[2] Amended Plans were filed on April 1, 2020, October 15, 2020, and December 24, 2020 respectively.

The Trustee's objection to the Fifth Amended Plan asserts the plan will not complete as filed, since Debtor reduced the pool to allowed general unsecured claims from 100% to $0.00. He argues that Debtor failed to pay all of her available monthly disposable income into the plan, amounting to a total of $32,141.50 unpaid available monthly income over the duration of the plan. That amount would have been more than sufficient to pay $4,444.74 in allowed general unsecured claims that had been filed.

Briefs were submitted by both parties, and an evidentiary hearing was conducted on December 19, 2023. At the hearing, the Debtor testified that at the time of filing her case, she worked as a hospital liaison. In April 2020, approximately one year after filing, her position was terminated, due to the COVID-19 pandemic. After her position at the hospital was eliminated, the Debtor received unemployment benefits and continued to receive retirement benefits until October 2021, when she began working at Collinsville Township as an office clerk. Although the unemployment benefits ceased at that time, the Debtor was paid an hourly wage by her employer and was still receiving the retirement benefits as well. In July 2022, the Debtor's employer decided to downsize and she was let go from her position. Debtor testified that she did not qualify for unemployment compensation at that time, so she applied for social security benefits. Once the social security benefits began in August 2022, the retirement benefits she had been receiving since the onset of the case ended.

Despite having not filed an Amended Schedule I or J from May 17, 2019 until September 12, 2023, the Debtor testified as to fluctuations in her income that occurred between 2019 and 2023. Debtor testified as to her tax returns for tax year 2019, which show adjusted gross income of $60,435.00 from her wages as a hospital liaison and the receipt of retirement benefits. This is the income that was reported on her original Schedule I. The 2020 tax returns were not admitted into evidence, but Debtor's 2020 W-2 shows wages earned of $18,865.89 during that tax year. Debtor

also received $24,972.00 in unemployment compensation and was also receiving $1,500.00 per month in retirement benefits. Her 2021 tax returns show wages and retirement benefits totaling $50,738.00 for that tax year. In 2022, three years after the filing of the case, Debtor's adjusted gross income decreased to $24,804.00. This reduction in income ultimately led to the filing of the Fifth Amended Plan to reduce the amount of the Debtor's plan payments and the filing of Amended Schedules I and J to reflect that the Debtor now has insufficient income to pay her monthly expenses.

It is undisputed that allowed general unsecured claims in this case total $4,444.74. To date, allowed general unsecured claims have been paid $0.00. The Trustee asserts that because the Debtor's Fifth Amended Plan proposes to pay neither 100% to unsecured creditor nor all of the Debtor's monthly disposable income, it fails to comply with the requirements of 11 U.S.C. § 1325(b)(1) and, therefore, cannot be approved. The Debtor has not addressed the Trustee's arguments regarding § 1325(b)(1). Instead, the Debtor asserts that the Fifth Amended Plan should be approved because she has complied with the requirements of 11 U.S.C. § 1329 and that the plan is proposed in good faith.

## **DISCUSSION**

In order to resolve the Trustee's objection, the Court must examine the interplay, if any, between § 1325(b)(1), which addresses plan confirmation and § 1329, which deals with plan modification. Section 1325(b)(1) of the Bankruptcy Code sets forth the requirements for plan confirmation. It states:

> (b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—
>
> (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

11 U.S.C. § 1325(b)(1)(A) & (B). Therefore, "[i]f an unsecured creditor or the bankruptcy trustee objects to confirmation, § 1325(b)(1) requires the debtor either to pay unsecured creditors in full or to pay all 'projected disposable income' to be received by the debtor over the duration of the plan." *Hamilton v. Lanning*, 560 U.S. 505, 130 S. Ct., 2464, 2469, 177 L.Ed. 2d 23 (2010). *See also In re Eubanks*, 581 B.R. 583, 585 (Bankr. S.D. Ill. 2018). ‼

The phrase "projected disposable income" is not defined by the Bankruptcy Code. However, the Code does specify how a debtor's "disposable income" is to be calculated. "Disposable income" is defined as "current monthly income received by the debtor" less "amounts reasonably necessary to be expended" for the debtor's maintenance and support. 11 U.S.C § 1325(b)(2)(A)(i). "Current monthly income" is calculated by averaging the debtor's monthly income in the six months preceding the filing of the bankruptcy petition. 11 U.S.C § 101(10A)(A)(i). In the instant case, the Debtor's original Schedule I evidenced that her "current monthly income" at the time of filing was $4,819.50. The "amounts reasonably necessary to be expended" for the Debtor's maintenance and support listed on the Debtor's original Schedule J were $3,527.00. Therefore, taking debtor's "current monthly income" of $4,819.50 less "amounts reasonably necessary to be expended" of $3,527.00 results in disposable income of $1,292.50.

It is undisputed that at no time in these proceedings has the Debtor paid her full amount of disposable income into her plan. However, because the Debtor's prior plans provided for 100% repayment to unsecured claimants under § 1325(b)(1)(A), the confirmation requirements of this section were satisfied. The Debtor now seeks to eliminate payment to unsecured creditors

entirely, which invokes the question of whether the requirements of confirmation apply to plan modifications.

Post- confirmation modification of a Chapter 13 plan is controlled by Section 1329 of the Bankruptcy Code. It states, in pertinent part:

> (a) At any time after confirmation of the plan but before completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—
>
>> (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;
>>
>> (2) extend or reduce the time for such payments; [or]
>>
>> (3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan . . . .
>
> ***
>
> (b) (1) Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section. . . .

11 U.S.C. § 1329.

Courts are split on the issue of whether § 1325(b) applies to post-confirmation plan modifications under § 1329(b). Some courts have concluded that because § 1329(b)(1) expressly references only §§1322(a), 1322(b), 1323(c), and § 1325(a), the omission of § 1325(b) means that its requirements are inapplicable to post-confirmation plan modifications. !See *In re Davis*, 439 B.R. 862 (Bankr. N.D.Ill. 2010); *In re Sunahara*, 326 B.R. 768, 54 Collier Bankr. Cas. 2d (MB) 1048 (B.A.P. 9th Cir. 2005). Conversely, others have held that § 1325(b) *does* apply to modifications, because the preface of § 1325(a) cross-references § 1325(b). *In re Heideker*, 455 B.R. 263 (Bankr. M.D. Fla. 2011). Subsection (1) of § 1325(a) has also been cited as a means of incorporating § 1325(b). *In re Cormier*, 478 B.R. 88, 95 (Bankr. D. Mass. 2012; *In re Braune*,

6

385 B.R. 167, 59 Collier Bankr. Cas. 2d (MB) 679 (Bankr. N.D. Tex. 2008) ("Although section 1329 does not expressly state that a postconfirmation modification must satisfy the disposable income test, a majority of courts [including this court] have held that a modification of this nature must satisfy Code §1325(a)(1), which [at least if the modification is proposed by the debtor] indirectly necessitates compliance with the disposable income test.").

This Court has previously addressed the application of § 1325(b)(1) to § 1329 plan modifications in the context of plan duration. *In re King,* 439 B.R. 129, 139 (Bankr. S.D. Ill. 2010). In that case, the Court examined the issue of whether above-median income debtors could modify their plan post-confirmation to provide for a payment period of less than sixty (60) months without also paying unsecured creditors in full. Although the factual situation in *King* differed to some extent, the same issue arose: whether the requirements of Section 1325(b) apply to post-confirmation modifications.

In *King*, the debtors sought to reduce the plan's terms to a period less than 60 months without paying unsecured claims in full, arguing that the "applicable commitment period" requirement of §1325(b)(1)(B) was not applicable to modified plans. The Court disagreed, explaining that although not specifically referenced in §1329, the statute still applied.

> It [§1325(b)] is incorporated into § 1329(b) by the express language of § 1325(a). The first clause of § 1325(a) states that the Court shall confirm a plan "*[e]xcept as provided in subsection (b).*" 11 U.S.C. § 1325(a) (emphasis added). Under the plain language of this clause, the requirements of § 1325(b) are *necessarily* incorporated into § 1325(a), and, therefore, are also included in the modification requirements of § 1329(b)(1).

*Id.* at 134.

The Court further elaborated that the incorporation of §1325 into §1329 is necessary to comply with the requirements of the Bankruptcy Code.

7

> Further, even if this Court were to find that § 1325(b) is not incorporated by reference into § 1329 through the preface to § 1325(a), plan modifications would still be subject to its requirements by virtue of 11 U.S.C. § 1325(a)(1), which requires that a plan comply with the provisions of Chapter 13 and other applicable provisions of the Bankruptcy Code.

*Id.* at 135.

Other courts have likewise concluded that § 1325(b) applies to post-confirmation plan modifications. *In re Heideker*, 455 B.R. 263, 269 (Bank. M.D.Fla 2011); *In re Cormier,* 478 B.R. 88, 97 (Bankr. D. Mass. 2012). In *In re Heideker,* the court concluded that § 1325(b) is implicitly incorporated into § 1329 through the applicability of § 1325(a). *Heideker*, 455 B.R. at 269. In doing so, the *Heideker* court rejected the approach followed by the court in *In re Davis,* 439 B.R. 862 ((Bankr. N.D.Ill. 2010), an oft cited case for the proposition that § 1325(b) does not apply to plan modifications. In *Davis*, the court held that § 1329's reference to the "requirements of § 1325(a)" did not include the exceptions in § 1325(b), but, instead, referred only to the nine conditions expressly imposed by subsections (a). *Davis,* 439 at 867. In rejecting the *Davis* analysis, the *Heideker* court opined:

> The Court, however is not persuaded by *Davis* and the other courts holding that Section 1325(b) does not apply to plan modification. To begin with, Section 1329 does, as many courts have recognized, implicitly incorporate Section 1325(b). Section 1329(b) provides that the requirements of Section 1325(a) apply to modifications under Section 1329(a). And Section 1325(a), in turn, specifically references Section 1325(b). The initial clause in Section 1325(a) reads: 'Except as provided in subsection (b).'
>
> The *Davis* court dismisses the idea that Section 1325(b) is implicitly incorporated into Section 1329 through Section 1325(a) by focusing on the phrase 'requirements of Section 1325(a).' According to the *Davis* court, a requirement is a 'requisite or essential condition.' The *Davis* court explained that the only 'requirements' in Section 1325(a) are subsections (1) through (9). Section 1325(b), according to the *Davis* court, is an exception to confirmation, not a requirement[.]

***

8

> But, [the *Davis*] analysis misses the mark. Section 1325(b) is a requirement (*i.e.* a requisite or essential condition) if the trustee or a holder of an unsecured claim objects to plan confirmation. If the trustee objects to confirmation, the court cannot confirm the debtor's plan unless the plan applies all of the income the debtor receives during the applicable commitment period to the unsecured claims.

*Heideker* at 269-70.

Similarly, the court in *In re Cormier* adopted the *Heideker* analysis, holding that the requirements of § 1325(b) apply to post-confirmation modifications under §1329 when a trustee or creditor objects to the proposed modified plan. *Cormier,* 478 B.R. at 97. The *Cormier* court agreed that the requirements of § 1325(b) are incorporated by reference into Section 1325(a) and are equally applicable to plan modifications. *Id.* at 96.

In addition to being consistent with a careful reading of § 1329, applying § 1325(b)(1) to post-confirmation modification protects against potential abuses and ensures that effect is given to the disposable income and applicable commitment period requirements of the Bankruptcy Code. Failure to apply §1325(b) requirements to plan modifications would invite abuses of the modification process. Debtors could simply attempt an end around of § 1325(b)'s requirements by confirming a plan that complied with § 1325(b), then modifying that plan to avoid further compliance with that section. This approach would render the disposable income test and applicable commitment periods a fleeting nullity. *Heideker*, 455 B.R. at 270-71. As this Court noted in *King*, courts which refuse to apply § 1325(b) to plan modifications because it is not expressly listed in § 1329(b)(1), essentially "read out" the qualifying clause of § 1325(a) that references § 1325(b) without explanation. *In re King*, 439 B.R. at 134   As this Court explained:

> It is a fundamental principle of statutory construction that "effect must be given, if possible, to every word, clause and sentence of a statute ... so that no part will be inoperative, superfluous, void, or insignificant." Here, the qualifying phrase in question is integrally related to the requirements of § 1325(a) itself and, therefore, the Court must give it meaning. Section 1325(a) unequivocally states that its provisions are subject to the restrictions of § 1325(b). Therefore, by incorporation,

9

the provisions of § 1325(b) also apply to § 1329.

*Id.* at 134–35 (*quoting Indianapolis Power and Light Co. v. I.C.C.,* 687 F.2d 1098, 1101 (7th Cir.1982).

Finally, the application of § 1325(b) to the modification process is supported by the objectives of Congress found in the legislative history.

> The congressional record, while scant, reveals that two of Congress' primary objectives in enacting bankruptcy reform legislation were to (1) *limit* judicial discretion in determining the appropriate amount to be repaid through bankruptcy and (2) maximize recovery to unsecured creditors. H.R.REP. NO. 109–31, Pt. 1, at 2 (2005) U.S.CODE CONG & ADMIN. NEWS 2005, pp. 88–89. *See also Nance,* 371 B.R. at 366 ("it is clear from the Chapter 7 means test, the adoption of standardized expense calculations for above-median debtors, and the calculation methods for determining 'projected disposable income' that a major goal of Congress was to replace judicial discretion with specific statutory standards and formulas"); *In re Wisham,* 416 B.R. 790, 798 (Bankr.M.D.Fla.2009) (the court "recognize[d] the stated desire of Congress to maximize the funds that are paid to unsecured creditors in bankruptcy" and that the goal of BAPCPA was to "ensure that debtors repay creditors the maximum they can afford"). Clearly, neither of these objectives are advanced under the debtors' rendering of § 1329(b).

*King*, 439 B.R. at 136–37.

Having concluded that § 1325(b) applies to post-confirmation plan modifications, the Court now must examine whether the Debtor's proposed plan modification complies with the requirements set forth in that section. A debtor may pay less than her disposable income over the duration of the plan *if* such payments will pay unsecured creditors in full, *or* she may pay all of her disposable income over the plan duration.

The parties agree that allowed general unsecured claims in this case total $4,444.74. The Debtor's current amended plan proposes to pay general unsecured claims $0.00, so allowed general unsecured claims are not being paid in full based upon the proposed modification. Thus, the Debtor's only other option to comply with § 1325(b) is to pay all projected disposable income over the duration of the plan, which she has not done.

10

Based on the testimony at the evidentiary hearing, it appears the original Schedules I and J do not accurately reflect all updated income throughout the case. The Debtor testified to her income fluctuations throughout the case. Specifically, the Debtor testified that she did not lose her job as a hospital liaison until April 2020 (month 12 of the plan). Accordingly, her available disposable income remained $1,292.50 for at least the first 11 months of the plan. The Debtor's plan payments were significantly less than her disposable income in those months. For months one and two of the plan, plan payments were $690.00, resulting in excess available income of $602.50 per month for those months. For months three through eleven, plan payments were $885.00, resulting in excessive available income of $407.50 each month for nine months. Totaling the amount of excess available income before the Debtor lost her job in month 12 of the plan, results in cumulative excess available income of $4,872.50. No testimony was provided for how these excess funds were used by the Debtor during that time. It is clear, however, that had the Debtor paid in all of her available disposable income within those first 11 months, her unsecured claims totaling $4,444.74 could have been paid in full.

Further, although the Debtor testified that her income decreased thereafter, it is apparent that she was still receiving some amount of excess disposable income up until August 2022. This is made clear by her testimony regarding the receipt of wages, unemployment benefits, and retirement income until she ultimately applied for social security benefits in August 2022. For three years, the Debtor chose to propose plans that paid in significantly less than her disposable income, while promising to pay her unsecured creditors 100% of their claims. During this time, the Debtor had more than adequate funds to pay her allowed unsecured claims in full. The Court does not need to reach an exact amount of excess disposable income received to conclude that

the Debtor did not pay in all of her disposable income over the plan duration to comply with § 1325(b).

## CONCLUSION

This Court has previously held[3], and stands by its decision, that plan modifications are subject to the requirements of 11 U.S.C. §1325(b). This Court has also previously concluded that debtors must either pay unsecured creditors in full or must pay all projected disposable income over the duration of the plan in order to comply with § 1325(b).[4] The Debtor in this case unquestionably failed to pay in all of her disposable income over the duration of the plan, and is now proposing a plan that pays less than 100% of allowed general unsecured claims. Accordingly, the Debtor's proposed plan fails to satisfy the requirements set forth in 11 U.S.C. §1325(b). The Trustee's objection to Fifth Amended Plan (Doc. 95) is SUSTAINED.

A SEPARATE ORDER SHALL ENTER.

ENTERED: April 1, 2024

/s/ Laura K. Grandy
_____
UNITED STATES BANKRUPTCY JUDGE

---

[3] *In re King,* 439 B.R. 129, 139 (Bankr. S.D. Ill. 2010).

[4] *In re Eubanks*, 581 B.R. 583, 585 (Bankr. S.D. Ill. 2018).